1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAM RENE FULLER,<br>CDCR #H-56512,<br><br>                                    Plaintiff,<br><br>          vs.<br><br>KAMARA, Corrections Counselor;<br>R.J. DONOVAN, Appeals Coordinator;<br>JANE DOE, Lieutenant; J. GOMEZ,<br>Correctional Counselor;<br>P. BRACAMONTE; JENNSEN,<br>Correctional Officer; MARTINEZ,<br>Correctional Officer; JOHN DOE,<br>Correctional Officer; JOHN DOE,<br>Correctional Counselor I; and<br>JOHN DOE, Warden,<br><br>                                    Defendants. | Case No.:  24-CV-1935 TWR (VET)<br><br>**ORDER (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; (2) DENYING MOTION FOR IMMEDIATE INJUNCTIVE RELIEF; AND (3) DISMISSING WITHOUT PREJUDICE COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)(1)**<br><br>[ECF Nos. 2, 3] |

Plaintiff Pam Rene Fuller, currently incarcerated at California Medical Facility ("CMF") in Vacaville, is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983.  (*See* ECF No. 1 ("Compl.").)  Plaintiff identifies as transgender and alleges that various correctional and inmate appeals officials at Richard J. Donovan Correctional Facility ("RJD") in San Diego violated her Eighth and Fourteenth Amendment rights by failing to adequately acknowledge risks to her safety due to her gender identity and by

1

denying her requests for transfer to a woman's correctional facility while she was incarcerated at RJD from 2020 through March 2024.  (*Id.* at 6.)  Plaintiff seeks general and punitive damages, (*id.* at 24), and has filed both a motion for leave to proceed *in forma pauperis* ("IFP Mot.," ECF No. 2) and a separate motion seeking immediate injunctive relief requiring her transfer to the California Institution for Women ("CIW") ("TRO Mot.," ECF No. 3).

For the reasons discussed below, the Court **GRANTS** Plaintiff leave to proceed IFP, **DENIES** her motion for a TRO and **DISMISSES WITHOUT PREJUDICE** her Complaint because it fails to state a plausible claim for relief against any Defendant.

## I.    Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'"  *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)).  Section 1915(b) "provides a structured timeline for

---

[1]     In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The additional $55 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, . . . an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1), (2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Plaintiff's IFP Motion complies with both 28 U.S.C. § 1915(a)(1) and (2). In support, she has submitted a prison certificate and certified copy of her California Department of Corrections and Rehabilitation ("CDCR") Inmate Trust Account Statement Report. (*See* IFP Mot. at 4, 6); *see also* S.D. Cal. Civ. L.R. 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff maintained an average monthly balance of $36.33 in her prison trust account and had $61.67 in average monthly deposits credited to the account over the six-month period immediately preceding the filing of her Complaint. At the time of filing, however, Plaintiff's available balance was zero. (*See* IFP Mot. at 4, 6.)

Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $12.33 pursuant to 28 U.S.C. § 1915(b)(1). *However, this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed.* *See* 28 U.S.C. § 1915(b)(4) ( "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal

judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). The CDCR will thereafter collect the balance of the $350 total fee owed and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II. Sua Sponte Screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)

### A. *Standard of Review*

Because Plaintiff is a prisoner and is proceeding IFP, her Complaint requires a preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion found frivolous, malicious, failing to state a claim, or seeking damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[2] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks

---

[2]    "Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ.

omitted); *Wilhelm*, 680 F.3d at 1121.  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342, n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B.    *Factual Allegations & Exhibits*

On June 3, 2020, Plaintiff reported via a Form CDCR 22 Inmate/Parolee Request for Interview ("CDCR 22") that she felt unsafe due to her transgender identity and requested either temporary single-cell status or housing with a cellmate who was transgender or "transgender friendly."  (*See* Compl. at 7; ECF No. 1-2 at 4.)  Plaintiff's CDCR 22 reported she had been "a victim of sexual assault in the pas[t]."  (*Id.*)  Defendant Kamara responded that since Plaintiff reported no "emergency" and had been cleared for double-celling at a recent Inmate Classification Committee ("ICC") hearing, her housing needs would be reviewed at her next annual review "unless new information change[d] [her] case factors before [then]."  (*Id.*)  Plaintiff claims that during her next ICC review on May 5, 2021, however, Defendant Kamara "did not address" her housing concerns and failed to adhere to a CDCR Memorandum and regulations governing implementation of California Senate

/ / /

---

P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Though resolution of a motion to dismiss under Rule 12(b)(6) is normally confined to the allegations stated in the complaint, a court "may also 'consider [1] materials that are submitted with and attached to the complaint'; [2] judicial notice of matters of public record'; and [3] 'unattached evidence on which the complaint necessarily relies if: [a] the complaint refers to the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the authenticity of the document.'"  *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)).

Bill 132, "The Transgender Respect, Agency, and Dignity Act."[3]  (*See* Compl. at 7; ECF No. 1-2 at 6–10, 12–27.)

More than two years later, on October 18, 2023, Plaintiff submitted a CDCR 602 Grievance (Log No. 466998) "requesting her safety issues be addressed," seeking single-cell status, and reiterating her desire for transfer to a woman's facility.  (Compl. at 8; *see also* ECF No. 1-3 at 2–3.)  In this grievance, Plaintiff alleged that while an S.B. 132 gender identity interview had been conducted by Defendant Correctional Counselor J. Gomez on September 14, 2023, she had yet to be transferred to a woman's facility pursuant to California Penal Code § 2606(a)(3).  (*See* Compl. at 9; ECF No. 1-3 at 2–3; *see also* ECF No. 1-3 at 12–13.)

On December 20, 2023, Plaintiff alleges that she appeared before another ICC in order to assess her request for an "S.B. 132 transfer."  (Compl. at 9; *see also* ECF No. 1-3 at 15–24.)  Defendant Gomez served on that committee, together with a chairperson, clinical psychologist, senior psychologist specialist, and a senior psychiatrist specialist.[4]

---

[3]     S.B. 132, codified at California Penal Code sections 2605 and 2606, became effective January 1, 2021.  *See Elias v. Griffin*, No. 2:23-CV-02940-MWF-JC, 2024 WL 4406823, at *2 (C.D. Cal. June 18, 2024).  California Penal Code § 2506 provides in relevant part that "(a) [a]n individual incarcerated by the [CDCR] who is transgender, nonbinary, or intersex, regardless of anatomy, shall: (1) Be addressed in a manner consistent with the incarcerated individual's gender identity [and] . . . (3) Be housed at a correctional facility designated for men or women based on the individual's preference, including, if eligible, at a residential program for individuals under the jurisdiction of the department[.]"  *Elias,* 2024 WL 4406823 at *2 n.3.

[4]     Plaintiff alleges that Defendant Bracamonte "was designated as the PREA Compliance Manager," but the Classification Committee Chrono reporting the December 20, 2023 ICC hearing's findings (attached as Exhibit G) includes no reference to Bracamonte.  (*See* Compl. at 14–15; *cf.* ECF No. 1-3 at 15–24.)  Fuller claims that S.B. 132 required Bracamonte to "meet with [her] when he received [her] request for [an] S.B. 132 transfer," but Bracamonte never responded to her request for an interview.  (*See* Compl. at 15–16.)  The Prison Rape Elimination Act (PREA) "was enacted to address the problem of rape in prison by creating and applying national standards to prevent, detect, and respond to prison rape, and by ensuring compliance of state and federal prisons by conditioning eligibility for federal grant money on compliance with the standards."  *Barber v. Cox*, No. 1:17-CV-00318-BLW, 2019 WL 454090, at *1 n.1 (D. Idaho Feb. 5, 2019) (unpublished).  The PREA does not, however, "give rise to a private cause of action."  *See Porter v. Jennings*, No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012) (collecting cases).  "Because the PREA contains no private right of action, it does not

(*See* ECF No. 1-3 at 15, 24.)  On January 19, 2004, the ICC completed Plaintiff's Gender Identity Based Transfer Review but denied her request for transfer to a women's facility based on its review of "overwhelming evidence" and after a "meaningful and extensive review of [Plaintiff's] ERMS and SOMS files, evaluation of [her] behavior and involvement as documented in [] disciplinary reports, [and] a totality of case factors." (*See* ECF No. 1-3 at 24.)

Specifically, the ICC considered Plaintiff's mental health assessment, medical care factors, September 14, 2023 Gender Identity Questionnaire ("GIQ") responses and in-person interview, her entire criminal case history and nature of her commitment offense, post-conviction in-custody disciplinary convictions including a stabbing and battery of other inmates, possession of inmate-manufactured weapons, mutual combat, participation in a riot, possession of alcohol and other contraband, refusal of urinalysis testing, and a past prison gang affiliation resulting in "other inmates believing [Plaintiff] was an informant," and transfers between and administrative segregation stays in eight separate CDCR facilities (CSP-SAC, CSP-COR, HDSP, SVSP, MCSP, CMF, CHCF, and LAC) prior to her transfer to RJD in  April 2019.  (*Id.* at 16–24.)

Based on this record, the ICC concluded in its January 19, 2024 Classification Committee Chrono that Plaintiff would "present major management and security concerns with the female population and disrupt the culture of the female institution based on her past violent behavior and predatory nature toward the public and adult females." [5]  (*Id.* at

_____

create a right enforceable under § 1983."  *Stevens v. Smith*, No. 1:22-CV-00741-SAB PC, 2022 WL 4292289, at *3 (E.D. Cal. Sept. 16, 2022), *report and recommendation adopted*, 2022 WL 16850368 (E.D. Cal. Nov. 10, 2022), *aff'd sub nom.*, No. 22-16850, 2023 WL 6140590 (9th Cir. Sept. 20, 2023).

[5]     In her Complaint, Plaintiff cites California Penal Code § 2606(a)(3) as the basis for her right to "[b]e housed at a correctional facility designated for men or women based on the [her] preference," but she fails to acknowledge that S.B. 132, as codified, limits that preference when "the Department of Corrections and Rehabilitation has management or security concerns with an incarcerated individual's . . . preferred housing placement pursuant to paragraph (3) of subdivision (a)."  Cal. Penal Code § 3606(b). In those cases. "the Secretary of the Department of Corrections and Rehabilitation, or the secretary's designee, shall, before denying . . . or housing the incarcerated individual in a manner contrary to the

24.)  The ICC noted that Plaintiff had not "been identified as abusive or as a victim" during PREA screenings dating from 2018 through 2023, although she had been "rehoused" temporarily in administrative segregation pending accusations of having "sexually grabbed" her cellmate's buttocks.  (*See id.* at 19, 20.)  A PREA investigation found "insufficient evidence to support or deny" the allegation, but "the victim moved out of [Plaintiff's] cell the following day."  (*Id.* at 20.)

In fact, at the time of the ICC hearing, Plaintiff had not had a cellmate at RJD since March 14, 2023, and acknowledged during her GIQ interview "that since her arrival to RJD she [] felt safe being alone and ha[d] not had many cellmates."  (*Id.* at 24.)  Therefore, the ICC concluded transfer to a woman's facility "dorm setting" was not warranted because "[Plaintiff] is likely to be a threat to the female population or targeted by the female population" and "her current institutional housing assignment c[ould] accommodate and provide all her necessities and case factors."  (*Id.*)  The Complaint alleges, however, that Gomez failed to address the safety concerns that Plaintiff raised both in her October 18, 2023 grievance and during the ICC hearing.  (*See* Compl. at 9–10.)

On January 23, 2024, Plaintiff claims that Defendant Lt. Jane Doe called her into a program office on behalf of the "Chief [of] Inmate Appeals" and Plaintiff confirmed she still had "security concerns."  (*See* Compl. at 8–9.)  Plaintiff alleges the Lt. Jane Doe told her that "it would be handled the next day," but she never heard from the Lieutenant again.  (*Id.* at 9.)  A week later, on February 1, 2024, however, a CDCR Office of Appeals Decision was rendered in response to Plaintiff's October 18, 2023 CDCR Grievance (Log No. 466998).  (*See* ECF No. 1-3 at 4–5.)  The decision informed Plaintiff that because the ICC's interim decision to deny her S.B. 132 request for transfer had already been denied, no remedy was warranted; however, her request for a "single cell or housing with another incarcerated person of [her] choice is to be considered."  (*Id.* at 4.)  Plaintiff alleges,

---

person's preferred housing placement, certify in writing a specific and articulable basis why the department is unable to accommodate that search or housing preference."  *Id.*

however, that that when she spoke with Defendant John Doe, a Correctional Counselor, about a single-cell on or about February 15, 2024, Doe simply indicated that the request would be denied at her next Unit Classification Committee hearing because Plaintiff did not "meet the criteria." (*See* Compl. at 16–17.)

Several weeks later, on February 28, 2024, Plaintiff alleges that Defendant Correctional Officers Jennsen, Martinez, and John Doe "let another inmate in [her] cell," and this inmate sexually assaulted both Plaintiff and her cellmate.[6] (*See* Compl. at 10.) Plaintiff claims that she "talked to Correctional Officer Urbano[7] about . . . Jenssen leaving [her] cell door open for long periods of time for no reason, but on March 5, 2024, Jennsen, Martinez, and Doe "let the same perpetrator in [her] cell" and she and her cellmate were sexually assaulted a second time. (*Id.* at 10–11.) Plaintiff alleges Jennsen "tried to let another inmate in [her] cell" again on March 7, 2024, but Plaintiff was able to "conv[i]nce this perpetrator" not to enter. (*Id.* at 11.) On March 22, 2024, Plaintiff "informed Defendant Jennsen that he need[ed] to start paying attention on who he lets in and out of the cells because somebody got sexually assaulted and th[ey are] filing a grievance saying [Jennsen] let someone in their cell." (*Id.*) Plaintiff states that she "did this in hopes the Defendant wouldn't let no one else in her cell." (*Id.*)

On May 14, 2024, after Plaintiff was transferred to CMF, she filed another CDCR 602 grievance (Log No. 565900) "outlining her safety concerns [at RJD], the people she spoke to[,] . . . and the events leading up to the sexual assault." (*Id.* at 11, 13; ECF No. 1-3 at 28–32.) This grievance identifies Jennsen, Martinez, and Doe as RJD's Housing Unit A Watch Tower Officers, and an inmate named Tucker as the person who sexually assaulted her. (*See* ECF No. 1-3 at 29–30.)

---

[6]    Plaintiff does not identify her cellmate in the Complaint but refers to her cellmate as Cleveland in CDCR 602 Grievance Log. No. 565900. (*See* ECF No. 1-3 at 29.) Fuller never mentions Cleveland in her Complaint, fails to indicate when Cleveland was assigned as her cellmate, and does not allege Cleveland caused her any harm.

[7]    Urbano is not named as a Defendant.

24-CV-01935-TWR (VET)

As to the remaining Defendants, Plaintiff contends that Defendants RJD Appeals Coordinator and/or John or Jane Doe Chief of Inmate Appeals acted "in direct conflict with their S.B. 132 training regarding transgender safety" both in the handling of her October 18, 2023 CDCR 602 Grievance (Log No. 466998), as well as with respect to a subsequent CDCR 602 Grievance (Log No. 551892) that she submitted on June 23, 2024, at CMF, repeating her requests for single-cell housing or transfer to "female housing." (*See* Compl. at 8–9; ECF No. 1-3 at 2–10.). She further alleges that John Doe, RJD's Warden, was "fully aware that he ha[d] a problem with his corrections officer[s] letting inmates in places where they are not assigned," but he "failed to put preventative measures in place." (*See* Compl. at 18.)

Based on these allegations, as well as the exhibits that are specifically incorporated by reference throughout her Complaint, Plaintiff seeks $15,000 in general and punitive damages from each Defendant based on claims that their failures to comply with S.B. 132's mandates violated her Eighth and Fourteenth Amendment rights,[8] (*see* Compl. at 6, 24), and immediate injunctive relief ordering Defendants to "transfer [her] to (CIW) California Institution for Women." (*See* TRO Mot. at 6.)

### C.    42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States,

---

[8]    To the extent that Plaintiff bases her claims on alleged violations of CDCR policy, regulations, or state law—including the Penal Code sections that codified S.B. 132, she fails to state a claim. Violations of state law or CDCR rules and policies alone are not sufficient to state a claim for relief under Section 1983. *See Paul v. Davis*, 424 U.S. 693 (1976); *Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law."); *see also Elias v. Griffin*, No. 2:23-CV-02940-MWF-JC, 2024 WL 4406823, at *9 (C.D. Cal. June 18, 2024) (*sua sponte* dismissing prisoner's alleged violations of S.B. 132); *Miller v. Ehlers*, No. 2:22-CV-1569 DB P, 2023 WL 2333513, at *3 (E.D. Cal. Mar. 2, 2023) (same).

and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Here, Plaintiff alleges all Defendants—both those identified by name (Kamara, Gomez, Bracamonte, Jennsen, and Martinez) and those identified only by position (Jane Doe Correctional Lieutenant, RJD Appeals Coordinator, John Doe Correctional Officer, John Doe Correctional Counselor I, and John Doe Warden)—are employed by the CDCR, and in that capacity violated both the Eighth and Fourteenth Amendments when they refused her request for transfer from RJD to a women's facility in accordance with her gender identity, declined to designate her for single-cell housing at RJD, and later failed to protect her from harm at the hands of a fellow inmate. (*See* Compl. at 2–6.) "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Therefore, in order to determine whether Plaintiff has pleaded a plausible claim for relief, the Court need next determine whether the factual allegations in her Complaint are sufficient to show "each Government-official defendant, through the official's own individual actions, has violated the Constitution," and thus, may be held "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 676, 678.

### D. Fourteenth Amendment Claims

First, the Court notes that Plaintiff invokes the Fourteenth Amendment as a potential constitutional basis for her claims, (*see* Compl. at 6), but she does not allege facts sufficient to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. Specifically, Plaintiff's allegations that Defendants refused her requests for transfer to another prison do not, even when liberally construed, amount to a violation of the Fourteenth Amendment.

The Supreme Court has held that incarcerated persons enjoy no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244–48 (1983). "[T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Id.* at 245. Instead, "confinement in any of the State's institutions is within the normal limits

or range of custody which the conviction has authorized the State to impose." *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 224–225 (1976)); *see also Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (intrastate prison transfer does not implicate Due Process Clause). Here, Plaintiff requested transfer to a dorm setting woman's facility where she felt the conditions would permit her to better "express[] [her]self" without being "harassed." (*See* ECF No. 1-3 at 12–13.) But the Fourteenth Amendment is not implicated even if CIW was a considerably *less* favorable institution. *See Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (transfer from work release center back to prison does not implicate due process nor equal protection rights). Therefore, the Court finds that Defendants' alleged failure to transfer Plaintiff from RJD to CIW by itself does not implicate the Fourteenth Amendment's Due Process clause. *See, e.g., Teryaeva-Reed v. Peters*, No. 24-CV-03910-JSW, 2024 WL 3540442, at *2 (N.D. Cal. July 24, 2024) (dismissing prisoner's due process challenge to interstate federal prison transfer pursuant to 28 U.S.C. § 1915(e)(2)), *amended on reconsideration in part*, 2024 WL 4113262 (N.D. Cal. Aug. 14, 2024).

Nor do Plaintiff's factual allegations plausibly support an equal protection violation. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To state an equal protection claim, a plaintiff generally must "show that the defendants acted with an intent or purpose to discriminate against [her] based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) ("We have held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent."). The Ninth Circuit has held that gender identity is at least a "quasi-suspect class." *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019);

/ / /

*see also Harrison v. Kernan,* 971 F.3d 1069, 1079–80 (9th Cir. 2020) (adopting intermediate scrutiny to gender-based equal protection claims arising in prison).

Even if the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1972); *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564.

Here, while Plaintiff's pleading makes clear she identifies as transgender, she does not explain how similarly situated individuals were treated differently than she, nor does she allege any facts to indicate intentional discrimination based on her gender identity or membership in some other protected class. *See id.; Thornton*, 425 F.3d at 1166; *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class). Nor does Plaintiff allege the ICC's decision to deny her transfer to CIW lacked a rational basis. *Village of Willowbrook* , 528 U.S. at 564. Therefore, Plaintiff's Complaint fails to state a viable equal protection claim under the Fourteenth Amendment. *See, e.g.*, *Lotusflower v. Headley*, No. C23-5558-JCC-SKV, 2023 WL 7018961, at *6 (W.D. Wash. Oct. 25, 2023) (*sua sponte* dismissing pursuant to 28 U.S.C. § 1915A transgender prisoner's equal protection challenge to BOP policy that allegedly set transgender inmates "apart from the rest of the prison population"); *O'Neal v. Crosby*, No. 3:23-CV-00077-SLG, 2023 WL 9600622, at *2 (D. Alaska Sept. 12, 2023) (*sua sponte* dismissing pursuant to 28 U.S.C. §§ 1915(e) and 1915A transgender prisoner's claims that correctional staff at
/ / /

1   men's facility violated her right to equal protection right by not allowing her to possess

2   make-up or a curling iron).

3   **E.   Eighth Amendment Claims**

4   Next, the Court finds that to the extent Plaintiff claims a violation of the Eighth

5   Amendment's proscription of cruel and unusual punishment, she also fails to state a

6   plausible claim for relief against any named or unnamed Defendant.  While Plaintiff alleges

7   broadly that "all Defendants named in [her] Complaint [were] fully aw[are] of the

8   vulnerabilities and statistics . . . confirm[ing] transgenders incarcerated in CDCR's male

9   institutions experience 'exceptionally' high rates of sexual victimization," (*see* Compl. at

10  6), and more specifically that Defendants Kamara, Gomez, Jennsen, Bracamonte,

11  Martinez, Jane Doe Correctional Lieutenant, RJD Appeals Coordinator, John Doe

12  Correctional Officer, John Doe Correctional Counselor, and John Doe Warden all "failed

13  to adhere to their training and the laws that govern transgender safety," (*id.* at 7–10), she

14  fails to allege that any of these persons were subjectively aware of any substantial risk that

15  she would be sexually assaulted by a fellow inmate—who was not her cellmate—on either

16  February 28, 2024 or on March 5, 2024, approximately three months *after* the ICC denied

17  her request for a transfer to CIW.  (*Id.* at 10–11.)

18  The Eighth Amendment requires prison officials to protect inmates from violence or

19  sexual assault at the hands of other inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833–34

20  (1994); *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020).  "It is not, however, every

21  injury suffered by one prisoner at the hands of another that translates into constitutional

22  liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834;

23  *Wilk*, 956 F.3d at 1147.  Rather, "a prison official violates an inmate's Eighth Amendment

24  right only if that official is 'deliberately indifferent'—in other words, if the official is

25  subjectively aware of a substantial risk of serious harm to an inmate and disregards that

26  risk by failing to respond reasonably."  *Wilk*, 956 F.3d at 1147; *Farmer*, 511 U.S. at 847.

27  "If a [prison official] should have been aware of the risk, but was not, then the [official]

28  has not violated the Eighth Amendment, no matter how severe the risk."  *Gibson v. County*

*of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc).  A showing of mere negligence or civil recklessness does not suffice.  *See Farmer*, 511 U.S. at 835–47.  In short, "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at  838.

First, Plaintiff faults Defendant Kamara for failing to address her request for single-cell status in a CDCR Form 22 Inmate/Parolee Request she filed on June 3, 2020, and again during an ICC annual review held on May 7, 2021, almost four years before she was assaulted.  (*See* Compl. at 7.)  The exhibits incorporated by reference in her Complaint, however, show that Plaintiff's June 3, 2020 Form 22 indicated only that she had been "a victim of sexual assault in the pas[t]," not that she was currently being victimized.  (ECF No. 1-2 at 4.)  Plaintiff's May 5, 2021 ICC hearing report, also incorporated by reference, further indicates that when Plaintiff "was interviewed regarding [her] placement and programming withing RJD[]," she denied having any safety concerns at the time.  (ECF No. 1-2 at 9.)  *See Martinez v. Newsom,* 46 F.4th 965, 971 (9th Cir. 2022) (noting that courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint") (quoting *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295–96 (9th Cir. 1998)).  Plaintiff makes no further allegations involving Kamara, does not allege Kamara was a member of the December 2023 ICC hearing denying her transfer to CIW, and fails to allege Kamara was aware she faced any serious risk of substantial harm when she was later assaulted on February 28, 2024 and March 5, 2024.  Therefore, Plaintiff's Eighth Amendment claims against Defendant Kamara are subject to *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). *See Wilk,* 956 F.3d at 1147*; Farmer,* 511 U.S. at 847.

Plaintiff's Eighth Amendment allegations against the remaining Defendants fare no better.  For example, Plaintiff claims generally that Gomez, Bracamonte, RJD's Appeals Coordinator, and John Doe Correctional Counselor all "failed to adhere to their training

and the laws that govern transgender safety," and as a result, she was sexually assaulted. (*See* Compl. at 8–10.)  Plaintiff contends that these Defendants failed to adequately address the safety concerns raised in her October 18, 2023 CDCR 602 Grievance requesting transfer to a woman's facility in accordance with S.B. 132, and/or failed to timely respond to a subsequent May 14, 2024 grievance "regarding her safety concerns and the events leading up to [her] sexual assault." (*See id.* at 8–14, 16.)  Critically, however, Plaintiff fails to allege that any of these parties were "subjectively aware of a substantial risk" that she would be subject to serious harm two months *after* she appeared at the December 20, 2023 ICC hearing denying her transfer to CIW, or at the time any of them interviewed her or reviewed either of her grievances.[9]  *See Wilk*, 956 F.3d at 1147; *Farmer*, 511 U.S. at 847. Instead, Plaintiff's December 20, 2023 ICC hearing report noted that during her September 14, 2023 interview with Defendant Gomez, she reported feeling "safe being alone," that she had "not had many cellmates" at RJD, and that "most of her cellmates [were] transgender." (*See* ECF No. 1-3 at 12–13, 24.)

Next, Plaintiff alleges that Jane Doe Lieutenant interviewed her about security concerns raised in an unidentified inmate appeal on January 23, 2024, and told her that "they would be handled the next day."[10]  (*See* Compl. at 9–10.)  Approximately four weeks

---

[9]     Moreover, a prison official whose only involvement in the allegedly unconstitutional conduct is the denial of an administrative grievance or appeal, or the failure to intervene on a prisoner's behalf to remedy allegedly unconstitutional behavior committed by others is not, without more, individually liable for the underlying violation.  *Perkins v. California Dep't of Corr. & Rehab.*, 2010 WL 3853276 at *7 (E.D. Cal. Sept. 30, 2010), *aff'd sub nom. Perkins v. Woodford*, 453 F. App'x 711 (9th Cir. 2011) (citation omitted).  In other words, Plaintiff does not have a constitutionally protected right to have her inmate grievances or appeals accepted or processed at the time or in the manner she prefers.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  "The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983." *Johnson v. Nugent*, No. 1:24-CV-949-JLT-BAM (PC), 2025 WL 73061, at *5 (E.D. Cal. Jan. 10, 2025).

[10]     The Court assumes that Plaintiff is referring to CDCR 602 Log. No. 466998, which was filed on October 18, 2023, and processed by the Office of Appeals on February 1, 2024, after her December 20, 2023 ICC hearing.  (*See* ECF No. 1-3 at 2–5.)

later, on February 28, 2024, and again on March 5, 2024, Plaintiff alleges that Defendants Jennsen, Martinez, and Correctional Officer John Doe "let another inmate in [her] cell" and this inmate sexually assaulted both Plaintiff and her cellmate. (Compl. at 10.)  On March 4, 2024, Plaintiff alleges that she told Correctional Officer Urbano[11] that Jennsen was "leaving [her] cell door open for long periods of time for no reason," but does *not* claim that she informed Urbano, Jennsen, or any other RJD official that she had been sexually assaulted as a result. (*Id.* at 11.)  Three days later, on March 5, 2024, Plaintiff alleges that Jennsen, Martinez, and Doe "let the same perpetrator in [her] cell to sexually assault [her] along with [her] cellmate." (*Id.* at 10.)  Only three weeks later, on March 22, 2024, does Plaintiff claim to have "informed Jennsen he need[ed] to start paying close attention on who he lets in and out of the cells because somebody got sexually assaulted." (*Id.* at 11.)

These allegations, while serious, are nonetheless insufficient to show Lt. Doe, Jennsen, Martinez, or Correctional Officer Doe were subjectively aware that Plaintiff faced a serious or substantial risk of harm at the hands of another inmate in her housing unit *before* she was assaulted on either February 28 or March 4, 2024. *See Wilk*, 956 F.3d at 1147; *Farmer*, 511 U.S. at 847.  While Plaintiff claims throughout her Complaint that her gender expression alone caused her to be concerned for her safety—especially were she to be assigned a cellmate who was not also transgender or transgender friendly—she fails to allege that any of these individual Defendants were aware of any risk she would be attacked by a non-cellmate—until March 22, 2024 when she informed Jennsen that "someone" had been sexually assaulted. (*See* Compl. at 11.)  Without more, however, the Court cannot plausibly infer that Jennsen or any other official responsible for ensuring Plaintiff's safety after the ICC's December 20, 2023 transfer denial were aware that Plaintiff faced a substantial risk of harm at RJD prior to the attacks. *See e.g., Wood v. Beauclair*, 692 F.3d

---

[11]    Plaintiff does not name Urbano as a Defendant.

1041, 1051 (9th Cir. 2012) (concluding that prison supervisors lacked knowledge of the risk in part because the prisoner "never disclosed [the sexual abuser's] actions to prison officials until long after the incidents at issue in this case occurred").  A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and . . . must also draw the inference*."  *Farmer*, 511 U.S. at 837 (emphasis added).  Eighth Amendment liability attaches only if a prison official "knows that inmates face a substantial risk of serious harm" and then consciously disregards that risk "by failing to take reasonable measures to abate it."  *Id.* at 847; *see also Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013) (finding no Eighth Amendment violation where inmate objected to a particular cellmate but "provided no specifics" as to the risk posed prior to his attack).

Lastly, the Court finds that Plaintiff's Complaint also fails to state any plausible claim for relief against John Doe, Warden of RJD.  Plaintiff alleges only that the Warden was "fully aware he ha[d] a problem with his correctional officers let[t]ing inmates in places where they were not assigned" and yet "failed to put preventative measures in place." (*See* Compl. at 18.)  However, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993) (noting that there is no respondeat superior liability under 42 U.S.C. § 1983).  Supervisory officials like the Warden may only be held liable under § 1983 if the plaintiff alleges their "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018); *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011).  In other words, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'"  *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (citations omitted).

Here, Plaintiff includes no factual allegations with respect to what RJD's unidentified Warden is alleged to have done, or failed to have done, with respect to her request for transfer to CIW, single-cell housing at RJD, or any threat posed by her housing status after the ICC's December 2023 hearing. While Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,'" it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). Nothing in Plaintiff's Complaint or in any of the exhibits she incorporates by reference plausibly suggests the Warden "through his own individual actions, . . . violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (holding that even a pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

For all these reasons, the Court finds that Plaintiff's Eighth Amendment claims as to all Defendants must be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Watison* 668 F.3d at 1112 ; *Wilhelm,* 680 F.3d at 1121.

## III.    Motion for Temporary Restraining Order/Immediate Injunctive Relief

Finally, Plaintiff requests immediate injunctive relief "order[ing] the Defendants to transfer [her] to CIW." (*See* TRO Mot. at 6.)

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend"). A court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983). Pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the

/ / /

action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

Substantively, Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a temporary restraining order under certain circumstances "to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *Ramos*, 975 F.3d at 887 (quoting *All. for Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)).

> Under the original standard, plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.

*Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The Ninth Circuit employs an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Id.* (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

> Under this alternate standard, [the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied.

*Id.* at 887–88 (internal quotation marks omitted) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)). In other words, "[a] preliminary injunction may be granted . . . where the moving party demonstrates either '(1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in [its] favor.'" *Grocery Outlet*

/ / /

*Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (emphasis and second alteration in original) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

At bottom, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Consequently, there are several limitations on when "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney," *see* Fed. R. Civ. P. 65(b), and "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *See* Fed. R. Civ. P. 65(c).

Here, Plaintiff's Complaint has not survived the initial *sua sponte* screening required by 28 U.S.C. § 1915(e)(2) and § 1915A, the United States Marshal has not been directed to effect service on her behalf, and the named Defendants have no actual notice of either her Complaint or her motion seeking preliminary injunctive relief. Therefore, the Court cannot grant Plaintiff injunctive relief because it has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(a)(1), (d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727–28. A district court has no authority to grant relief in the form of a temporary restraining order or permanent injunction where it has no jurisdiction over the parties. *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.") (citation and internal quotation omitted).

Moreover, in conducting its initial screening, the Court has found that Plaintiff's Complaint fails to state any claim upon which § 1983 relief can be granted and has dismissed it pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Therefore, Plaintiff has necessarily failed to show, for purposes of justifying preliminary injunctive relief, any likelihood of success on the merits of her claims. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a

fair chance of success on the merits[.]") (internal quotation marks and citation omitted); *see also Williams v. Duffy, et al.,* No. 18-cv-06921-BLF, 2019 WL 95924, at *3 (N.D. Cal. Jan. 3, 2019) ("[Having reached th[e] conclusion [that Plaintiff's complaint failed to state a claim], the Court need not reach the remainder of the *Winter* factors."); *Asberry v. Beard*, No. 3:13-cv-2573-WQH JLB, 2014 WL 3943459, at *9 (S.D. Cal. Aug. 12, 2014) (denying prisoner's motion for preliminary injunction because his complaint was subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A; therefore, he had not shown he was "likely to succeed on the merits" of any claim, that "the balance of equities tip[ped] in his favor," or the issuance of an injunction would serve the public interest (citing *Winter*, 555 U.S. at 20)).

Additionally,  in order to meet Fed. R. Civ. P. 65's "irreparable injury" requirement, Plaintiff must do more than simply allege imminent harm; she must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  This requires that she allege "specific facts in an affidavits or a verified complaint [which] clearly show" a credible threat of "immediate and irreparable injury, loss or damage."  Fed. R. Civ. P. 65(b)(A).  Nothing in Plaintiff's unsworn Complaint or her Motion establish that she faces an immediate or credible threat or irreparable injury.  Instead, she alleges only to have been assaulted in the past and points to "exceptionally high rates of sexual victimization of transgender [inmates] in male institutions," which prompted the passage of California Senate Bill 132 in 2020.  (*See* IFP Mot.)  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine*, 844 F.3d at 674–75; *Rigsby v. State*, No. CV 11-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (denying prisoner's TRO request based on fear of potential future injury due to past assaults); *Chappell v. Stankorb*, No. 1:11-CV-01425-LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative"), *report and recommendation adopted*, 2012 WL 2839816 (E.D. Cal. July 9, 2012).  A presently existing actual threat must be shown, even though injury

need not be certain to occur.  *See Zenith Radio Corp. v. Hazeltine Research, Inc*., 395 U.S. 100, 130–31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279–80 (9th Cir. 1997); *Caribbean Marine*, 844 F.2d at 674.

Finally, Plaintiff's claims for injunctive relief are moot in light of her transfer from RJD to CMF.  (*See* ECF No. 5); *Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (holding that prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

Thus, because Plaintiff has failed to serve the required notice upon the adverse parties, has not shown a likelihood of success on the merits, and has offered only unsworn allegations of past harm, the Court **DENIES** her Motion for TRO/Immediate Injunctive Relief (ECF No. 3).  *See Dymo Indus. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it.").

## IV.   Conclusion and Orders

Accordingly, for all the reasons explained, the Court:

(1)   **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

(2)   **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $12.33 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

(3)   **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail

on Jeffrey Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

(4) **DENIES** Plaintiff's Motion for TRO and/or Immediate Injunctive Relief (ECF No. 3).

(5) **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint *sua sponte* in its entirety based on her failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

(6) **GRANTS** Plaintiff 60 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to her original pleading. Defendants not named and any claim not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

*If Plaintiff fails to file an Amended Complaint within 60 days, the Court will enter a final Order dismissing this civil action* based both on her failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and her failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: February 6, 2025

Honorable Todd W. Robinson
United States District Judge